STATE FARM FIRE AND CASUALTY
COMPANY, Plaintiff and
Appellant,

v.

Robert SIGMAN, Defendant and Appellee,

and

Brett Rudolph, and Rick and Karen
Rudolph, Defendants.

Civ. No. 930067.

Supreme Court of North Dakota.

Oct. 26, 1993.

Zuger Kirmis & Smith, Bismarck, for plaintiff and appellant; argued by Charles T. Edin.

Rolfson Schulz Lervick Law Offices, Bismarck, for defendant and appellee; argued by Calvin N. Rolfson.

MESCHKE, Justice.

State Farm Fire and Casualty Company appealed from the trial court's award of attorney fees to its insured in State Farm's declaratory judgment action to determine insurance coverage. We hold that State Farm is obligated under its insurance policy to pay its insured's attorney fees for defending the declaratory judgment action, and we affirm the judgment.

Robert Sigman, a high school junior, struck Brett Rudolph, a high school freshman, in a dispute over a girl. Robert's blow broke Brett's jaw. Brett and his parents sued Robert for civil damages, alleging that Robert willfully and maliciously struck Brett in the face and caused his injuries. At the time, Robert's father, Marvin Sigman, had a homeowner's liability insurance policy with State Farm. Marvin asked State Farm to defend and indemnify Robert in the Rudolphs' lawsuit. State Farm defended Robert, subject to a reservation of right to contest coverage under the policy.

State Farm brought this declaratory judgment action against Robert, as its insured, under NDCC Ch. 32–23. State Farm claimed that it was not obligated to defend or indemnify Robert for attacking Brett, because the homeowner's liability policy excluded coverage for damages caused by the insured's "willful and malicious acts" and for damages "expected or intended by an insured."

Robert retained separate counsel to represent him in the declaratory judgment action. Robert asserted that he was covered by the liability policy because his striking Brett was neither intentional nor malicious, but rather was an impulsive reaction resulting from a dyslexic learning disability that caused Robert to sometimes misinterpret what he heard and saw.

Realizing that the costs of litigating its duty to defend would be considerable, State Farm settled Rudolphs' claim against Robert for $17,429.80, and Rudolphs' lawsuit was dismissed. Then State Farm and Robert made cross motions for summary judgment in the declaratory judgment action. State Farm sought to have their action dismissed because the settlement mooted the dispute. Robert agreed that the question of coverage was moot, but argued that State Farm must reimburse his attorney fees and costs for defending the declaratory judgment action.

The trial court concluded:

> [U]nder the policy involved in this case, plaintiff's declaratory judgment action caused defendants to incur attorney fees and costs in defending said action at plaintiff's request for which there is coverage under the policy.

The trial court dismissed the declaratory judgment action with prejudice and awarded Robert attorney fees, together with costs, late charges, and interest, for a total of $23,987.00. State Farm appeals.

First, State Farm asserts that the policy language is unambiguous and does not engage State Farm to pay an insured's attorney fees for defending a declaratory judgment action to determine policy coverage. Second, State Farm asserts that it would be inequitable to require it to pay Robert's attorney fees, because the declaratory judgment action was brought in good faith, and State Farm had good reason to believe that the policy exclusion for willful and malicious acts precluded coverage of Robert's attack on Brett.

No one accuses State Farm of bad faith for seeking a declaratory judgment on policy coverage. State Farm obviously acted in good faith by defending Robert while the

coverage question was open. However, State Farm had the option of having the court resolve the coverage question, even after it settled the Rudolphs' claim against Robert. *See Blackburn, Nickels & Smith, Inc. v. National Farmers Union Property & Casualty Co.*, 452 N.W.2d 319 (N.D.1990). By voluntarily requesting dismissal of the declaratory judgment action, State Farm preempted a judicial determination of coverage. For purposes of this appeal, we must assume that Robert's conduct was covered by the homeowner's policy.[1]

■ The trial court concluded that State Farm was obligated under the insurance policy to pay Robert's attorney fees for defending the declaratory judgment action. The relevant parts of the policy say:

SECTION II—ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. Claim Expenses. We pay:

\* \* \* \* \* \*

c. reasonable expenses an insured incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $50 per day for aiding us in the investigation or defense of claims or suits

\* \* \* \* \* \*

SECTION II—CONDITIONS

\* \* \* \* \* \*

3. Duties After Loss. In case of an accident or occurrence, the insured shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

\* \* \* \* \* \*

c. At our request, assist in:

\* \* \* \* \* \*

(3) the conduct of suits and attend hearings and trials. . . .

The construction of an insurance policy, including a determination of whether the contract is clear and unambiguous, is a question of law that is fully reviewable by this court. *Continental Casualty Co. v. Kinsey*, 499 N.W.2d 574 (N.D.1993). As we said in *State Farm Mutual Auto. Ins. Co. v. LaRoque*, 486 N.W.2d 235 (N.D.1992), an insurance contract is ambiguous when reasonable arguments can be made in support of different positions as to its meaning.

■ We disagree with State Farm that this policy language is unambiguous.[2] The language can be reasonably interpreted to require the insurer to pay its insured's litigation expenses only for claims and lawsuits brought by third parties against the insured. However, it is not so expressed, and the language that State Farm will pay its insured's "reasonable expenses" incurred at the company's "request" is broad in scope and is without express conditions. That broad language can also be reasonably interpreted to require State Farm to pay its insured's expenses in defending a lawsuit by State Farm to determine policy coverage. Because there are several reasonable interpretations of this policy language, we conclude that the policy is ambiguous.

Other jurisdictions have construed similar policies. For example, in *Olympic S.S. Co., Inc. v. Centennial Ins. Co.*, 117 Wash.2d 37, 811 P.2d 673, 680–681 (1991), the policy said that the insurer would pay "reasonable expenses incurred by the *insured* at the Company's request." The Supreme Court of Washington concluded that this clause required the insurer to reimburse its insured for attorney fees incurred in determining whether there was coverage under the policy. Its reasoning is persuasive:

When an insured purchases a contract of insurance, it seeks protection from expenses arising from litigation, not "vexa-

---

1. In deciding this case, we express no opinion about an insurer's obligation to pay its insured's attorney fees in a declaratory judgment action when the court determines that there is no insurance coverage.

2. Without deciding the question, we have said that similar policy language may be grounds for awarding attorney fees incurred by an insured in a declaratory judgment action brought by the insurer. *Farmland Mutual Ins. Co. v. Farmers Elevator, Inc.*, 404 N.W.2d 473, 478 n. 1 (N.D. 1987).

tious, time-consuming, expensive litigation with his insurer." ... Whether the insured must defend a suit filed by third parties, appear in a declaratory action, or as in this case, file a suit for damages to obtain the benefit of its insurance contract is irrelevant. In every case, the conduct of the insurer imposes upon the insured the cost of compelling the insurer to honor its commitment and, thus, is equally burdensome to the insured.... Further, allowing an award of attorney fees will encourage the prompt payment of claims.

[Citations omitted] 811 P.2d at 681. We agree that an insured purchases liability insurance for protection from litigation expense.

Construing a similar contract provision, the Supreme Court of Idaho, in *Occidental Fire & Casualty Co. v. Cook*, 92 Idaho 7, 435 P.2d 364, 368 (1967), explained its conclusion that an insured's attorney fees in a declaratory judgment action are covered expenses:

Appellant contends that the trial court erred in awarding attorneys' fees to Lloyd Cook under the terms of the insuring agreement. Section II(e) of the "Insuring Agreements" contained in the insurance contract, reads:

"The company shall—reimburse the insured for all reasonable expenses, other than loss of earnings incurred at the company's request."

The fact that this is a declaratory judgment action should have no effect on the award of "reasonable expenses" to the insured. Lloyd's rights are being determined in this cause and he is required to defend. Appellant Company cannot avoid its responsibility under Section II(e) of the insuring agreements, on the ground that the action is for declaratory judgment relief, when the effect upon the insured is as burdensome in its consequences as any other type of legal action.

For other examples, *see Allstate Ins. Co. v. Robins*, 42 Colo.App. 539, 597 P.2d 1052 (1979); *Security Mutual Casualty Co. v. Luthi*, 303 Minn. 161, 226 N.W.2d 878 (1975); *Upland Mutual Ins., Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974). These and other jurisdictions have similarly interpreted like policy language.

 There is contrary authority. Some courts have refused to construe similar contract language to cover attorney fees in a declaratory judgment action. For an example, *see Liberty Mutual Ins. Co. v. Continental Casualty Co.*, 771 F.2d 579 (1st Cir.1985). We do not find this reasoning persuasive, especially in view of our rule that, absent another controlling criterion, ambiguous insurance language should be interpreted most favorable to the insured. *Heitkamp v. Milbank Mutual Ins. Co.*, 383 N.W.2d 834 (N.D. 1986). The more persuasive reasoning, we believe, is found in those declaratory judgment cases concluding that policies like this one obligated the insurer to pay its insured's attorney fees for determining coverage. The policy language is broad in scope, and we construe it to require State Farm to pay for Robert's costs and attorney fees in defending against State Farm's declaratory judgment action.

 In addition to the policy language,[3] there is an independent ground for the trial court's award of attorney fees. NDCC 32–23–08 says:

*Supplemental relief.*—Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper....

Litigation between an insurance company and its insured to determine coverage presents a unique situation. The insured pays premiums to receive protection, not a lawsuit from its insurer. When the insured gets that policy protection only by court order after

---

3. NDRCivP 41(a)(2) states that the voluntary dismissal of an action at the plaintiff's request and by court order will be made "upon such terms and conditions as the court considers proper." The trial court and both parties treated this dismissal as a summary judgment under NDRCivP 56. Yet the case was voluntarily dismissed upon State Farm's request, so NDRCivP 41(a) could apply. Though not argued here, an award of attorney fees to the defendant would have been a proper part of the "terms and conditions" imposed by the court in ordering a voluntary dismissal. *See Hoffman v. Berry*, 139 N.W.2d 529 (N.D.1966); *Yoffe v. Keller Industries, Inc.*, 580 F.2d 126 (5th Cir.1978).

litigating coverage, it is both "necessary" and "proper" to award attorney fees and costs to give the insured the full benefit of his insurance contract. In *Elliott v. Donahue,* 169 Wis.2d 310, 485 N.W.2d 403, 409 (1992), the Wisconsin Supreme Court held that an insured's attorney fees should be awarded under a similar supplemental relief provision in Wisconsin's declaratory judgment statute:

> We conclude that the supplemental relief under [the statute] may include a recovery of attorney fees incurred by the insured in successfully establishing coverage under an insurance policy.... We are not convinced that our holding in this case will deter an insurance company from contesting coverage where coverage is a fairly debatable issue. Rather, our holding today merely preserves for the insured the benefit of indemnification and defense that was contracted and paid for under the contract of insurance.

*See also Casey v. State Farm Mutual Auto. Ins. Co.,* 464 N.W.2d 736 (Minn.App.1991). If an insured is not awarded attorney fees as supplemental relief, he is effectively denied the benefit he bargained for in the insurance policy. 7C Appleman, *Insurance Law and Practice* § 4691, p. 283 (1979), explains:

> [T]he insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better off financially than if he had never had the contract right mentioned above.

We conclude that the trial court did not err in awarding Robert the attorney fees and costs incurred by him in defending the declaratory judgment action by State Farm.

■■■ State Farm also asserts that the award of attorney fees was excessive and unreasonable. The trial court is considered an expert in determining the amount of attorney fees. *In re Estate of Ridl,* 455 N.W.2d 188, 194 (N.D.1990). Its determination that attorney fees are reasonable will not be overturned on appeal absent a clear abuse of discretion. *Matter of Estates of Kjorvestad,* 287 N.W.2d 465 (N.D.1980).

There are numerous factors for the trial court to consider in determining the reasonableness of attorney fees, including: the time and labor required; the novelty and difficulty of the questions involved; the skill required to properly perform the legal services; the customary fee; and the result obtained. *Hughes v. North Dakota Crime Victims Reparations Board,* 246 N.W.2d 774 (N.D.1976). We are not persuaded that the trial court's award of attorney fees in this case was an abuse of discretion.

■■■ As a result of the efforts of Robert's attorney, State Farm settled the tort claim against Robert, the trial court dismissed the declaratory judgment action, and Robert was awarded his costs and attorney fees. State Farm complains that the $125.00 per hour fee charged by Robert's counsel was excessive. However, the fact that an hourly rate is high does not make the charges unreasonable. *Matter of Estates of Kjorvestad,* 287 N.W.2d at 469. The approach of Robert's counsel to the case was novel and produced a very favorable result. The trial court considered a detailed itemized description of the legal work by Robert's attorney and fairly determined the award.

The judgment is affirmed.

NEUMANN and SANDSTROM, JJ., concur.

LEVINE, J., joined in the result.

VANDE WALLE, Chief Justice, dissenting.

I respectfully dissent. The majority's construction of the language of the insurance policy leads to a conclusion that State Farm agreed to pay Sigman for resisting State Farm's effort to prove there was no coverage under the policy. I cannot accept that contorted construction. The obvious purpose and meaning of the language in the policy is that Sigman will be paid expenses for assisting in the trials and hearings involving, in this case, the Rudolphs, the third party. It defies belief that State Farm "requested" Sigman to "assist" in the declaratory judgment action or that Sigman aided State Farm

in the investigation or defense in the declaratory judgment action.

Although coverage may be dictated if an ambiguity in the policy language exists, *Walle Mut. Ins. Co. v. Sweeney*, 419 N.W.2d 176, 181 (N.D.1988) [VandeWalle, J., concurring specially], I would not stretch that principle so far as to reach an absurd result.

The majority professes not to answer the question of whether or not an insurer's obligation to pay its insured attorney fees in a declaratory judgment action when the court determines that there is no insurance coverage, but it appears the language of the contract relied upon by the majority would command the same result in that instance.

In relying upon decisions from Washington and Idaho, the majority opinion ignores the North Dakota history of declaratory judgments to determine coverage under an insurance policy. This court held in *Smith v. American Family Mut. Ins. Co.*, 294 N.W.2d 751 (N.D.1980) that an insurer's obligation to defend and an insurer's obligation to indemnify are separate and distinct contractual elements. We concluded in *Corwin Chrysler–Plymouth v. Westchester Fire Insurance Company*, 279 N.W.2d 638 (N.D.1979) that an insurer had an implied duty to deal fairly and in good faith with its insured and that a violation of that duty gives rise to an action in tort for which consequential and punitive damages may be sought. Notwithstanding the onus put on an insurer by those decisions, a majority of the Court in *United Pac. Ins. Co. v. Aetna Ins. Co.*, 311 N.W.2d 170, 174 (N.D.1981) [VandeWalle, J., dissenting] held there was no justifiable controversy in the issues of liability and duty to defend and thus a declaratory judgment action could not be maintained until after the liability of the insured to a third party had been determined. *See also Aberle v. Karn*, 316 N.W.2d 779, 784 (N.D.1982) [VandeWalle, J., and Medd, D.J., dissenting].

Subsequent to that decision the Legislature, in 1983, amended section 32–23–06, NDCC, to provide that "the court shall render or enter a declaratory judgment or decree in an action brought by or against an insurance company to determine liability of the insurance company to the insured to defend, or duty to defend, although the insured's liability for the loss may not have been determined." 1983 N.D.Laws Ch. 377, § 1. *See also Blackburn, Nickels v. National Farmers*, 452 N.W.2d 319 (N.D.1990).

The legislative history of that amendment is clear. The intent was to prevent the insurer from being required to expend its resources to defend when it believed no duty to do so was present or to suffer the possibility of a bad-faith action for consequential and punitive damage if it were wrong. *See* minutes of Senate Judiciary Committee, January 26, 1983, Testimony on H.B. 1378.

The majority would require that expenditure not in defending but rather in paying the attorney fees of the insured in the declaratory judgment action, thus turning the 1983 legislation into a Pyrrhic victory with the appearance of a "gottcha" result. Should the declaratory judgment action result in a decision that the policy provides coverage, there may be an equitable argument that the insurer should be required to pay the insured's attorney fees. Where the result is no coverage, those equities are nonexistent.

It might be argued that State Farm's decision to settle is an admission of coverage, but such an argument ignores reality. Some cases cost less to settle than to try and where economy rather than a legal victory is the motivating force, the case will be settled rather than tried. We encourage settlements where possible. *E.g., Aaker v. Aaker*, 338 N.W.2d 645 (N.D.1983). Under the facts of this case, I have little doubt that State Farm would have prevailed on the issue of coverage because of Robert's intentional assault. It is unjust to require State Farm to pay Sigman's attorney fees because it took the opportunity to settle with Rudolph for less than it might have cost to have the court declare there was no coverage for the intentional assault.

State Farm's tactic may well have benefited Sigman too, for if the Rudolph's action had gone to trial the judgment may have been greater. This leads to a final observation. I fear the majority opinion will ultimately prove detrimental to insureds, particularly where there is a strong indication of

no coverage. In those instances, the insurer may well risk the slight chance of a bad-faith action in tort and refuse any defense rather than bring a declaratory judgment action and face the certainty of being required to pay attorney fees for the insured. The insureds, rather than having a defense tendered by the insurers with a reservation of rights, will either have to provide their own defense or expend the money to bring a declaratory judgment action against the insurer which, if the insureds lose, will surely result in yet greater expenditures by them. Had State Farm been prescient and known the holding of the majority opinion, I expect, under the facts of this case, it would have tendered no defense to Sigman and left him to his own devices and defenses. If the majority opinion appears favorable to the insured, I suggest that edge will be short-lived. The majority has done them no favor.

I would reverse the judgment of the district court.